UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICKIE HICKS,

        Plaintiff,               Case No. 1:19-cv-376

v.                                         Honorable Gordon J. Quist

UNKNOWN SHELDON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff Rickie Hicks is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional

Facility (ICF) in Ionia, Michigan. Plaintiff sues the following individuals who work at ICF: Nurse Unknown Sheldon and "Regional Nurse" Unknown Party, identified as "John/Jane Doe." (Compl., ECF No. 1, PageID.2, 5.) He also sues Corizon, the MDOC's healthcare provider.

Plaintiff alleges that he injured his hand on July 12, 2016, during an altercation with another prisoner. As a result of the altercation, he was placed in segregation. The following day, July 13, Plaintiff sent a kite to healthcare notifying prison medical staff of his "injury and symptoms." (Compl., PageID.6.) A kite response attached to the complaint describes the contents of his kite as "My hand is extrem[e]ly swollen and it isn't going down. The palm of my hand is turning bluish purple[.] I believe it is fractured." (MDOC Kite Response, ECF No. 1-1, PageID.13.)

Plaintiff received the foregoing kite response on July 14. The response informed him that he had been "placed on the call out to be evaluated by a nurse regarding this concern. Please be patient. The nurse will asses[s] your needs and determine if you need a referral to the MP for further evaluation and treatment."[1] (Compl., PageID.6; see Kite Response, ECF No. 1-1, PageID.13.) The response also indicated that Plaintiff was added to the callout for "Wednesday, Thursday, and today, but due to staffing shortages nursing has been unable to see you yet." (*Id.*)

On July 15, Nurse Unknown Party allegedly claimed that he/she visited Plaintiff's cell and then left without examining Plaintiff because Plaintiff would not acknowledge the nurse. However, Plaintiff asserts that no one came to visit him that day.

Finally, on July 20, a nurse evaluated Plaintiff's injury and referred him to the medical provider. The next day, he received an x-ray that revealed a bone fracture in the fourth

---

[1] Although the term MP is not clear, it appears based on the context that MP referred to medical provider or medical practitioner.

proximal metacarpal of his right hand.On July 25, Plaintiff complained to healthcare that the pain in his hand was "unbearable"; healthcare staff provided him with a splint and pain medication. (Compl., PageID.6.) They also referred him to an orthopedic specialist.

Plaintiff met with the specialist on August 8, who treated him. Plaintiff alleges that, due to the delay in treatment, his hand "healed improper[.]" (Compl., PageID.9.) Consequently, he suffers "long term impairment, consistent pain, and los[s] of mobility in his right hand[.]" (*Id.*, PageID.8.) He must take pain medication to alleviate the pain, and his ability to work and participate in activities is more limited than it was before his injury.

Plaintiff asserts four claims. First, he claims that Corizon failed to provide adequate medical care, in violation of Plaintiff's rights under the Eighth Amendment. Second, he contends that "medical personnel" failed to "deal with [his] problem" in a "timely" manner, which violated prison policy and his rights under the Eighth Amendment. (*Id.*) Third, he claims that Defendant Sheldon violated prison policy. Fourth, he claims that Defendant Unknown Party violated prison policy.

As relief, Plaintiff seeks compensatory and punitive damages from all defendants.

**II.      Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

3

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

Plaintiff asserts that Defendants' failure to treat him in a timely manner violated the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to

4

provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*,

6

258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### A. Corizon

Defendant sues Corizon because it is responsible for providing healthcare to prisoners housed by the MDOC. However, Plaintiff does not allege any involvement by Corizon in the conduct leading to his injury. Corizon is not liable simply because it employed or supervised an individual who violated Plaintiff's constitutional rights. In other words, it is not liable under a theory of vicarious liability or respondeat superior. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, Plaintiff must establish that a policy or custom of the corporation caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818.

Plaintiff has not alleged facts indicating that a policy or custom of Corizon is responsible for any injury that he suffered due to the alleged lack of adequate medical care. Plaintiff indicates that some of the delay in treatment was the result of inadequate staffing, but Plaintiff does not allege facts suggesting that Corizon has a custom or policy of providing inadequate medical staff at prison facilities.

7

In short, Plaintiff has not alleged any unconstitutional conduct by Corizon. Consequently, Plaintiff does not state a claim against Corizon.

### B. Nurse Sheldon

Plaintiff does not allege any specific conduct by Nurse Sheldon. However, the attachments to the complaint suggest that Sheldon is the one who responded to Plaintiff's kite on July 13, telling him that he was placed on the list to be evaluated by a nurse. (*See* Kite Response, ECF No. 1-1, PageID.13 (bearing Sheldon's name).) However, Sheldon's response does not indicate deliberate indifference to Plaintiff's medical needs. To the contrary, she responded to his needs by scheduling him for an appointment with a nurse.

To the extent Plaintiff suggests that Sheldon was deliberately indifferent because she was aware that Plaintiff was unable to meet with medical staff for several days, he does not state a claim because he does not allege that Sheldon was deliberately indifferent to a substantial risk of serious harm. Plaintiff apparently told her that that his hand was swollen and was changing color. This description does not indicate a need for immediate care that would be "obvious even to a lay person." *Blackmore*, 390 F.3d at 899. Swelling and bruising following an injury does not, without more, obviously require immediate medical attention. Plaintiff does not allege that Sheldon was aware of any other symptoms that would have indicated that Plaintiff could not wait a few days before receiving an evaluation. Consequently, Plaintiff's complaint about Sheldon does not meet the requirements of an Eighth Amendment claim.

### C. Nurse Unknown Party

Plaintiff contends that an unknown nurse falsely claimed that Plaintiff would not respond when he/she visited Plaintiff's cell on July 15. As a result, Plaintiff had to wait until July 20 to be seen by medical staff for his injured hand. However, Plaintiff does not state a claim

8

against this nurse for much the same reason that he does not state a claim against Nurse Sheldon. Plaintiff does not allege any facts indicating that he faced a substantial risk of serious harm without immediate medical attention, let alone that Nurse Unknown Party was aware of these facts. Even if this nurse were aware of the same facts as Defendant Sheldon, Plaintiff does not state a claim for the reasons discussed above with respect to Sheldon. Swelling and bruising in an injured hand are not symptoms that would obviously require immediate medical attention. Thus, even if Nurse Unknown Party never visited Plaintiff at all, she was not deliberately indifferent to a substantial risk of serious harm.

### IV. Policy Violations

Plaintiff's remaining claims are premised on Defendants' alleged violations of MDOC policy. A violation of prison policy does not, without more, give rise to a federal claim under § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not violations of state law or prison policies. *Lugar*, 457 U.S. at 924; *Laney*, 501 F.3d at 580-81. Consequently, Plaintiff fails to state a claim under § 1983 based on Defendants' alleged violations of MDOC policies.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: August 9, 2019 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE